**WINSTON & STRAWN LLP**
David C. Scheper (SBN: 120174)
DScheper@winston.com
Angela M. Machala (SBN: 224496)
AMachala@winston.com
333 S. Grand Avenue, 38th Fl.
Los Angeles, CA 90071
Telephone:   (213) 615-1700
Facsimile:   (213) 615-1750

Richard Weber (*pro hac vice*)
RWeber@winston.com
John W.H. Harding (*pro hac vice*)
JWHarding@winston.com
1901 L St NW
Washington, D.C. 20036
Telephone: (202) 282-5000
Facsimile: (202) 282-5100

*Attorneys for Defendant Si Oh Rhew*

**LAW OFFICES OF BEAU B. BRINDLEY**
Beau B. Brindley (*pro hac vice*)
bbbrindley@gmail.com
53 West Jackson Blvd., Suite 1410
Telephone: (312) 765-8878

*Attorneys for Defendant C'est Toi Jeans, Inc.*

**PAUL HASTINGS LLP**
Renato Mariotti (SBN: 226447)
Renatomariotti@paulhastings.com
Holly Campbell (*pro hac vice*)
Hollycampbell@paulhastings.com
71 South Wacker Drive, 45th Floor
Chicago, IL 60606
Telephone: (312) 499-6005
Facsimile: (312) 499-6105

Peter B. Axelrod (SBN: 190843)
Peteraxelrod@paulhastings.com
200 Park Avenue
New York, NY 10166
Telephone: (212) 318-6000
Facsimile: (212)319-4090

*Attorneys for Defendant Lance Rhew*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>          vs.<br><br>C'EST TOI JEANS, INC., SI OH RHEW, and LANCE RHEW,<br><br>                    Defendants. | **Case No. 20-222(A)-ODW**<br><br>*Hon. Mark C. Scarsi*<br><br>**DEFENDANT'S MOTION TO MODIFY COURT QUESTIONING OF DEFENSE WITNESSES** |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on October 15, 2024, at 8:30 a.m., or as soon thereafter as counsel may be heard, in Courtroom 7C of the United States District Court for the Central District of California, located at First Street Courthouse, 350 W. 1st Street, 7th Floor, Los Angeles, CA 90012, before the Honorable Mark C. Scarsi, defendants C'est Toi Jeans, Inc., Si Rhew, and Lance Rhew will and hereby do move this Court to modify its questioning of witnesses.

This motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the complete files and records in this action, the arguments of counsel, and such other matters as may be presented at the hearing on this Motion or prior to the Court's decision.

1    DATED:  October 15, 2024                Respectfully submitted,

2                                            /s/ Renato Mariotti

3                                            Renato Mariotti
                                             Peter B. Axelrod
4                                            Holly H. Campbell
                                             Nicole D. Lueddeke

5                                            Attorneys for Lance Rhew

6                                            /s/ David C. Scheper

7                                            David C. Scheper

8                                            Angela M. Machala
                                             Paul B. Salvaty
9                                            John W.H. Harding

10                                           Lara Markarian

11                                           Attorneys for Si Oh Rhew

12
                                             /s/ Beau B. Brindley
13                                           Beau B. Brindley

14
                                             Attorneys for C'est Toi Jeans, Inc.
15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### I.    INTRODUCTION.

During the defense case, the Court has been much more extensive in its examination of witnesses than it was during the government's case.  Defendants are concerned that continued extensive questioning of defense witnesses by the Court risks "'creat[ing] an atmosphere in which an objectively fair trial [can]not be conducted.'" *United States v. Pritchard*, 485 F. App'x 199, 201 (9th Cir. 2012) (quoting *United States v. Harris*, 501 F.2d 1, 11 n.20 (9th Cir. 1974)).  Defendants thus respectfully request that this Honorable Court cease its examination of defense witnesses in ways that appear akin to cross examination on behalf of the government and ask only questions that are truly necessary to clarifying the testimony of a witness.

### II.    LEGAL STANDARD.

"While a district court judge has considerable discretion in the management of his courtroom, the judge 'must be ever mindful of the sensitive role [he] plays in a jury trial and avoid even the appearance of advocacy or partiality.'"  *United States v. Hall*, 271 F. App'x 559, 560 (9th Cir. 2008) (unpublished) (quoting *United States v. Harris*, 501 F.2d 1, 10 (9th Cir. 1974)) (alteration in original); *cf. United States v. Malcolm*, 475 F.2d 420, 927 (9th Cir. 1973) ("The trial court's role is especially sensitive in a jury trial. It must be ever mindful to eschew advocacy or the appearance of advocacy."); *United States v. Allsup*, 566 F.2d 68, 72 (9th Cir. 1977) ("[T]he court must also be mindful that in the eyes of a jury, the court occupies a position of 'preeminence and

special persuasiveness', and, accordingly, the court must avoid the appearance of giving aid to one party or another." (quoting *United States v. Trapnell*, 512 F.2d 10, 12 (9th Cir. 1975)) (citation omitted)).  "Questions which aid in clarifying testimony of a witness, expedite examination or confine it to relevant matters are proper if made in a nonprejudicial manner."  *United States v. Pena-Garcia*, 505 F.2d 964, 967 (9th Cir. 1974).  "However, the judge cannot conduct his questioning in such manner as to convey to the jury the impression that he has formed an opinion as to the truth of the witness' statement or the verdict that should be returned." *Id.*

"Where the parties are represented by competent counsel, the judge cannot usurp their role." *Id.*  "And most certainly he cannot take on the task of the prosecution." *Id.*; *see, e.g.*, *Hall*, 271 F. App'x at 560 (finding reversible error where "the court aggressively questioned two witnesses in a manner that crossed the line between clarifying the evidence, which is permissible, and aiding the Government, which is not.").  Accordingly, the Ninth Circuit has cautioned that, "[w]hen the participation of the trial judge is designed to elicit answers favorable to the Government, 'it is far better for the trial judge to err on the side of abstention from intervention.'" *Harris*, 501 F.2d at 11 (quoting *Blumberg v. United States*, 222 F.2d 496, 501 (5th Cir. 1955)); *see also United States v. Wheeler*, 224 F. App'x 639, 640 (9th Cir. 2007) (unpublished) (Reinhardt, J., concurring) (explaining "that the district court erred in taking on 'the task of the prosecution' by cross-examining [the defendant] in a manner that had the

1    effect of impeaching his credibility." (quoting *Pena-Garcia*, 505 F.2d at 967)).

2

3    ### III.    ARGUMENT.

4

5        Defendants are concerned that the Court's questioning of Defendant Si Rhew and

6    other defense witnesses may risk "project[ing] to the jury an appearance of advocacy or

7    partiality." *See United States v. Mostella*, 802 F.2d 358, 361 (9th Cir. 1986) (quoting

8    *Shad v. Dean Witter Reynolds, Inc.*, 799 F.2d 525, 531 (9th Cir. 1986)).  Regardless of

9    the Court's intention, the Court's questioning of government witnesses and defense

10   witnesses has not been even-handed; questioning of the defense witnesses has been

11   more extensive.    Moreover, the questioning of the defense witnesses, including

12   Defendant Si Rhew, has "intentionally or otherwise, aided the prosecution." *See United*

13   *States v. Harris*, 501 F.2d 1, 10 (9th Cir. 1974).[1]  For instance, the Court asked Manny

14

15

16

17   ─────────────────

18   [1] The Court's approach to the testimony of Defendant, Si Rhew, and to his questioning by CTJ counsel, is simply not consistent with its handling of the questioning of Si Rhew by government counsel.  For instance, when counsel for C'est Toi Jeans mistakenly based a question posed to Si Rhew during redirect examination on the premise that Henry Hough denied creating additional companies for Si Rhew due to counsel's incorrect recollection of Hough's testimony, the Court expressed its "disappointment in the misrepresentation" and questioned counsel's integrity.  10/11/24 Tr. at 138.  However, numerous misrepresentations by government counsel went without any such rebuke.  Counsel for the government represented that Si Rhew "admitted" to "cheating customs duties . . . ." 10/10/24 Tr. at 111.  That was false. Mr. Rhew explicitly and repeatedly denied taking such actions. Counsel for the government represented that Si Rhew testified that he "did actually falsify documents and pass them to Customs . . . ." *Id.* 91.  That was false.  He explicitly denied any involvement in the customs process on numerous occasions. Counsel for CTJ objected to these misrepresentations and the objections were overruled without comment. As far as misrepresentations go, counsel for the United States of America misrepresenting that a criminal defendant admitted to personally committing crimes during his testimony is a far more severe transgression than misremembering a detail of an early witness's testimony—Mr. Hough lied about the purpose of creating the companies rather than creating the company in the first place.  Yet, the government's intentional misstatements were met with neither the Court's disappointment nor questioning of the government's integrity.

19

20

21

22

23

24

25

26

27

28

Muriel, one of the expert witnesses for the defense:

> THE COURT: Okay. That was the question. The question was whether you saw anything that was red flags indicating money laundering.
>
> So you didn't see anything suspicious about people coming in with bags of cash, dumping it on the counter, having it being counted, and just throwing it in a lunch bag? To you that was perfectly fine? Nothing suspicious about that?

10/8/24 Tr. at 112.  This question was asked despite there being absolutely no evidence of any person dumping cash on the counter at C'est Toi.  The question not only gave the impression that the Court was questioning the credibility of Mr. Muriel, but it further suggested that the Court itself viewed the activities at C'est Toi to be suspicious.[2]  The Court's questioning of and comments regarding the other defense expert, Barry Koch, also gave the potential appearance that the Court doubted the witness's credibility and was advocating for the government.  *See, e.g.*, 10/8/24 Tr. at 158 (describing the expert's testimony to the jury as "being not an expert opinion"); *id.* at 161-62 ("THE COURT: Yeah. So if I'm bringing cash from Mexico to the United States and bringing dollars, and I've got $20,000, I've got to either smuggle it in or I've got to fill out a form, correct? THE WITNESS: Correct.  THE COURT: So if I legally brought it in and filled out a form, could you see any reason why that same person would be reluctant to fill out an 8300 Form when they paid for goods here?").

---

[2] While the Court did eventually give a curative instruction, such instructions are not always sufficient to cure the appearance of bias.  *See Maheu v. Hughes Tool Co.*, 569 F.2d 459, 472 (9th Cir. 1977).

Moreover, the Court's questioning of Defendant Si Rhew thus far suggested to the jury that the Court disbelieved the Defendant's testimony.  For instance, the Court's questioning regarding C'est Toi's largest customers was akin to what one might expect from the government's cross examination:

> THE COURT: Okay. So you're not aware of which customers -- what the percentage was that your biggest customers amounted to for your business?
>
> Let me start over. Let me ask it better. Sitting here today, you don't know how much of your sales were to these customers that you said were your four biggest?
> . . .
>
> THE COURT: So these were not your biggest customers, then; is that true?
> . . .
>
> THE COURT: Okay. So you don't know whether or not these were big customers of yours. It seems like your testimony is -- correct me if I'm wrong -- that you prefer not to sell to these customers because they were too picky?

10/9/2024 Tr. at 165-66.   And the Court continued to ask leading questions[3] which risked giving the impression that the Court viewed cash payments from Latin-American customers as being inherently suspicious.  *See* 10/9/2024 Tr. at 166-68.  The Court's

---

[3] *See Pollard v. Fennell*, 400 F.2d 421, 424 (4th Cir. 1968) ("More objectionable was the fact that the district judge's questions were usually leading in form. It must be remembered that this was a trial before a jury, and the impact of a question by the court on both the witness and the jury, together with the natural reluctance of counsel to object to the court's questions, which is even greater when the questioning is in the presence of a jury, should not be underestimated.").

questioning of Defendant Si Rhew "went beyond clarifying the evidence." *See United States v. Morgan*, 376 F.3d 1002, 1008 (9th Cir. 2004). The extensive questioning of defense witnesses, including Defendant Si Rhew, risked giving the jury the impression that the Court favored the prosecution.

This risk is particularly salient in light of the threatened contempt against Defendant Si Rhew. In front of the jury, the Court threatened sanctions and contempt against Defendant Si Rhew:

> THE COURT: Let's strike that again. Okay. I'm only going to do this a couple more times, and then there's going to have to be some sort of a sanction. Stop. Stop. Stop. Stop.
>
> You understand the Court can hold you in contempt for not following the Court's orders, correct?
>
> THE WITNESS: Yes.
>
> THE COURT: That contempt could include monetary sanctions and jail time, so I would ask you to be very careful about paying to instructions from the Court.
>
> I've given you a lot of leeway, but I'm at the end of my rope. The question before you was: You told this Court that Mr. Hough lied, correct? That requires a yes-or-no answer.

10/11/24 Tr. at 133. The Court's treatment of Defendant Si Rhew stood in stark contrast to the treatment of a government witness who flat out refused to answer questions from defense counsel:

> Q. Okay. And so, after you talked to the agents in 2014, you were able to keep on running your business without a problem, correct?
>
> A. I don't understand why you ask me that question. How is that related? I don't like to answer. Why do you ask me about my company?
>
> MR. BRINDLEY: Judge, the witness needs to answer the question. I would ask you to direct him to answer.

8

Your Honor?

THE COURT: I heard you.

No.

MR. BRINDLEY: He's not required to answer the question?

THE COURT: What didn't you understand about "No" with respect to your request that I order him to answer?

MR. BRINDLEY: Objection; judge. If the witness is refusing to answer then I think we have to have a sidebar.

THE COURT: Why don't you ask your next question then maybe we can get done here.

9/19/24 Tr. at 71-72. While that was before this Honorable Court was substituted under Rule 25(a), the jury is unlikely to understand or appreciate the nuance of different Judges permitting different levels of leeway for witnesses in answering questions. Had this Honorable Court presided over that portion of the trial, perhaps the interaction would have gone differently. But, as the case stands, what the jury has seen is government witnesses being permitted to refuse answering the questions of defense counsel while the defendant is threatened with sanctions and contempt for answers that are far more responsive than those given by Mr. Song. The disparate treatment of government witnesses and defense witnesses, including Defendant Si Rhew, risks giving the jury the impression of partisanship by the Court in favor of the government.

Defendants are concerned that the Court's continued questioning of Defendant Si Rhew risks amplifying the risk of perceived partisanship by the jury. The Court indicated that "a lot of the questions [it] was going to ask were asked in the cross."

10/11/24 Tr. at 104.  That statement suggests that the Court's questions might be more appropriate for the prosecution to ask in its cross-examination of Defendant Si Rhew, lest the Court's questioning project to the jury an appearance of advocacy or partiality. Defendants "realize that an alert and capable judge at times feels that he can assist in developing the evidence by participating in the interrogation of witnesses."  *United States v. Carmel*, 267 F.2d 345, 350 (7th Cir. 1959).  However, given the record in this case, Defendants submit it may be advisable "to forego such intrusion upon the functions of counsel, thus maintaining the court's position of impartiality, in the eyes of the ever-observant jurors."  *Id.*  The United States is "are represented by competent counsel," and it would be error for the Court to "take on the task of the prosecution." *United States v. Pena-Garcia*, 505 F.2d 964, 967 (9th Cir. 1974).

## IV.   CONCLUSION.

Accordingly, Defendants respectfully request that this Honorable Court cease cross-examination style questioning of defense witnesses, particularly of Defendant, Si Rhew; and limit its questioning of defense witnesses to avoid the appearance of advocacy or partiality.

Dated: October 15, 2024              Respectfully submitted,

                                     */s/ David C. Scheper*
                                     David C. Scheper
                                     Angela M. Machala
                                     Paul B. Salvaty
                                     Richard Weber
                                     John W.H. Harding
                                     Lara Markarian

*Attorneys for Defendant Si Oh Rhew*

*/s/ Renato Mariotti*
Renato Mariotti
Peter B. Axelrod
Holly H. Campbell
Nicole Lueddeke

*Attorneys for Defendant Lance Rhew*

*/s/ Beau B. Brindley*
Beau B. Brindley

*Attorney for Defendant C'est Toi Jeans, Inc.*