BILAL A. ESSAYLI
United States Attorney
LINDSEY GREER DOTSON
Assistant United States Attorney
Chief, Criminal Division
MIRI SONG (Cal. Bar No. 291140)
Assistant United States Attorneys
Chief, Domestic Security and
 Immigration Crimes Section
     1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephones:  (213) 894-2262
     Facsimile:   (213) 894-0141
     E-mails:     miri.song@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR No. 20-0222(A)-ODW-1 |
| Plaintiff, | GOVERNMENT'S OBJECTIONS TO PRESENTENCE REPORT AND SENTENCING POSITION AS TO DEFENDANT SI OH RHEW |
| v. | |
| SI OH RHEW, | Hearing Date: April 23, 2025 |
| Defendant. | Hearing Time: 2 p.m. Location: Courtroom of the Hon. Mark C. Scarsi |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney MiRi Song, hereby files its sentencing position as to defendant Si Oh Rhew.

//

//

//

This Sentencing Position is based on the attached Memorandum of Points and Authorities, the files and records of this case, and such evidence and argument as the Court may permit at any further hearing to be held in this matter.

Dated: April 8, 2025            Respectfully submitted,

BILAL A. ESSAYLI
United States Attorney

LINDSEY GREER DOTSON
Assistant United States Attorney
Chief, Criminal Division

  /s/ MiRi Song
MIRI SONG
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

At the end of a seven-week trial, a jury found defendant Si Oh Rhew guilty of nineteen counts in the First Superseding Indictment. For his crimes, the government recommends a high-end sentence of 121 months' imprisonment, three years of supervised release, $1,900 in special assessment fees, and a fine to be determined under 18 U.S.C. § 3571. Additionally, to the extent necessary, the government requests a deferred restitution hearing after sentencing under 18 U.S.C. § 3664(d)(5).

**II.   STATEMENT OF RELEVANT FACTS**

Given the Court's familiarity with the facts pertaining to defendant C'est Toi Jeans, Inc. ("C'est Toi"), and because C'est Toi's conduct largely overlaps with that of defendant, the government does not provide a lengthy recitation here and instead incorporates by reference the factual background set forth in its sentencing position for C'est Toi.

**III.   THE PRESENTENCE REPORT AND GUIDELINES CALCULATION**

The government largely concurs with the United States Probation Office's calculations. The only objections the government has currently are the failure to apply an enhancement for obstruction of justice and to impose the maximum available fine under 18 U.S.C. § 3571. The government additionally reserves the right to amend its position and recommend a higher restitution amount and resulting fine based on outstanding calculations of loss to the IRS.

**IV.   APPROPRIATE SENTENCE UNDER THE GUIDELINES AND § 3553(A) FACTORS**

   **A.   The nature and circumstances of the offense and the history and characteristics of defendant**

The government recommends a high-end sentence of 121 months' imprisonment. Si Oh Rhew was not a passive participant in a fraudulent business scheme. He was its architect and its primary beneficiary. Over a period of years, defendant orchestrated a

sophisticated operation that defrauded the United States of millions in customs duties and tax revenues, facilitated the laundering of bulk cash from narcotics trafficking, and corrupted legitimate commerce to serve criminal ends. As proven at trial, defendant was the chief decision-maker and driving force behind a large-scale customs fraud and money laundering scheme.

Defendant was not a man without choices. He owned a successful business and enjoyed substantial wealth. Yet, he chose to cheat and hide millions from the United States so that he would not have to pay his fair share. He then chose to turn a blind eye, and thereby chose, to use his business as a vehicle for crime. That speaks volume about his values—and his culpability. He must be punished accordingly. A high-end custodial sentence at the high-end of the applicable Guidelines range, with immediate payment of the restitution owed to Customs and IRS and the maximum available fine, would be appropriate.

**B.    A Substantial Custodial Sentence Is Warranted to Reflect the Seriousness of the Crime, Promote Respect for the Law, and to Provide Just Punishment for the Offense**

A significant term of imprisonment, such as the one that the government recommends, should be imposed here. This was not a victimless crime. Defendant's calculated and sustained deception weakened the integrity of our borders and financial systems, emboldened transnational criminal organizations, and cheated the public that plays by the rules and pays its fair share. Defendant abused his position as the owner and president of C'est Toi not to build an honest business, but to create a pipeline for fraud and laundering—protected by layers of deceit and driven by greed. To impose a low-end—or even a modest term—of imprisonment would minimize the gravity of defendant's crime. Such damage to the public trust, economic fairness, and law enforcement is no less real. Others in the fashion district, and in similar industries, are watching this case. A lenient sentence would send the message that large-scale customs fraud and laundering can be punished lightly. The opposite message should be sent— that white collar crimes, especially when committed with such audacity and scope, will

be met with real and lasting consequences.

    Defendant's crimes are made even more egregious by the fact that he committed them through C'est Toi, which is an "S Corporation." This is a legal structure that is predicated on transparency, tax compliance, and the close alignment between corporate operations and individual accountability. As the 75% owner of C'est Toi, defendant effectively had control over the company's operations and direct personal responsibility for its tax obligations. That structure imposed a heightened duty of honesty and disclosure—a duty that Si Oh Rhew violated with little remorse. Instead, defendant tried to blame his certified public account, Henry Hough. However, defendant admitted that he hid the full amount of revenue that C'est Toi received. Defendant instead sent Henry Hough curated bank account statements, which only reflected what defendant chose to deposit in the banks. Defendant admitted that he did not tell Henry Hough that he was hiding cash from the business, including to the tune of over $38 million in a closet of his condo.

    Defendant abused the very legal and tax benefits provided by the S corporation framework and flouted the responsibilities that come with them. S corporations are taxed on a "pass-through" basis, meaning profits and losses flow directly to the shareholder—in this case, defendant. When C'est Toi fraudulently underreported millions in revenue, the beneficiary of that concealment was not some faceless conglomerate. It was defendant personally who benefitted. He did not just fail to prevent corporate wrongdoing—he directed it and profited from it directly. He exploited a trust-based tax treatment that S corporations receive because they are granted significant tax advantages by the United States government based on the expectation that the owners will maintain accurate records and comply with tax laws. Defendant's conduct represents a fundamental betrayal of that trust. An S corporation is not taxed at the corporate level. Instead, income, deductions, and credits "pass through" to the shareholder like defendant, who must then report them on individual tax returns. This avoids double taxation and simplifies the tax process for the owners.

Defendant used this structure to benefit personally from underreported income and avoided both corporate and individual taxation on millions in gross receipts. He hid profits at the corporate level and never reported them at the individual level, thereby perpetuating for years a dual fraud that defeated the pass through trust system. He should accordingly be punished to the full extent permitted by law and stripped of the ill-gotten gains from his conduct.

## V. CONCLUSION

Defendant built a business empire by defrauding the United States and laundering criminal proceeds. He did so knowingly, persistently, and without remorse. For that, he should be held fully accountable. The government respectfully requests that the Court impose a significant term of imprisonment at the high-end of the applicable Sentencing Guidelines range, along with a substantial financial penalty and immediate payment of full restitution to Customs and the IRS. As such, the government requests 121 months' imprisonment, three years of supervised release, $1,900 in special assessment fees, and the maximum available fine to be determined under 18 U.S.C. § 3571. Additionally, to the extent necessary, the government requests a deferred restitution hearing after sentencing under 18 U.S.C. § 3664(d)(5) so that the full amount of the loss to Custom and IRS can be accounted.