1

2   **LAW OFFICES OF BEAU B. BRINDLEY**
    Beau B. Brindley (*pro hac vice*)
3   bbbrindley@gmail.com
    53 West Jackson Blvd., Suite 1410
4   Chicago, IL 60604
    Telephone: (312) 765-8878
5

6   *Attorneys for Defendants*

7                 **UNITED STATES DISTRICT COURT**

8                 **CENTRAL DISTRICT OF CALIFORNIA**

9   UNITED STATES OF AMERICA,              Case 2:20-cr-00222-MCS-1

10              Plaintiff,                  *Hon. Mark C. Scarsi*

11      vs.                                 **DEFENDANT SI RHEW'S**
                                            **SENTENCING POSITION**
12  SI OH RHEW, C'EST TOI JEANS,
    INC., and LANCE RHEW,                   Hearing Date: April 23, 2025
13                                          Hearing Time: 2 p.m.
                Defendants.                 Location: Courtroom of the Hon. Mark C.
14                                          Scarsi

15

16

17      Defendant Si Rhew, by and through its counsel of record, Beau B. Brindley,

18  hereby files his sentencing position.

19      This request is based on the attached sentencing memorandum, the files and

20
    records of this case, and such evidence and argument as the Court may permit at any
21
    further hearing to be held in this matter.
22

23  DATED: April 8, 2025
24
                                    Respectfully submitted,
25
                                    By: /s/ Beau B. Brindley
26                                  Beau B. Brindley
                                    Attorney for Defendants
27

28

# SENTENCING MEMORANDUM

## I.    Sentencing Guidelines

Under Group B (failure to report currency transactions), the Presentence Investigation Report imposes a two-level enhancement under USSG §2S1.3(b)(1)(A) for Mr. Rhew purportedly knowing that proceeds received by C'est Toi Jeans came from unlawful activity—i.e. drug trafficking (PSR at 20).  What the PSR fails to acknowledge is that Mr. Rhew was initially charged with conspiracy to commit concealment money laundering.  The jury determined that this object of the conspiracy was not proven against Mr. Rhew.  Therefore, the jury necessarily considered the question of Mr. Rhew's knowledge that some proceeds were coming from drug trafficking and determined that there was insufficient evidence to prove this knowledge beyond a reasonable doubt.  That renders the concealment money laundering portion of the conspiracy acquitted conduct.

The Court should send the message that it respects the finality of verdicts and the trial process. Use of acquitted conduct to determine sentencing guidelines promotes a lack of respect for the law. The problem was perhaps best captured in a letter a juror wrote to a judge after acquitted conduct was considered:

> It seems to me a tragedy that one is asked to serve on a jury, serves, but then finds their work may not be given the credit it deserves. We, the jury, all took our charge seriously. We virtually gave up our private lives to devote our time to the cause of justice, and it is a very noble cause as you know, sir. . . . What does it say to our contribution as jurors when we see our verdicts, in my personal view, not given their proper weight. It

> appears to me that the defendants are being sentenced not on the charges for which they have been found guilty but on the charges for which the [prosecutor's] office would have liked them to have been found guilty. Had they shown us hard evidence, that might have been the outcome, but that was not the case.

Jim McElhatton, *A $600 drug deal, 40 years in prison*, The Washington Times, June 29, 2008, at M04; *see United States v. Canania*, 532 F.3d 764, 778 & n.4 (8th Cir. 2008) (Bright, J., concurring) (quoting the letter from this juror and worrying that use of acquitted conduct means "allowing a prosecutor and judge to say that a jury verdict of 'not guilty' for practical purposes may not mean a thing").

Criminal defendants and the general public need to know that the right to a trial is a real and meaningful right. In the federal system, where trials are becoming more and more infrequent, where sentences are becoming more and more harsh, where the incentives against exercising the right to a trial (851 notices, mandatory minimums, government charging discretion, guidelines enhancements, etc.) are tremendous, and where the government secures convictions in the overwhelming majority of its cases, it is more important than ever that when a not guilty verdict is actually entered, defendants know that it still means something. *See United States v. Settles*, 530 F.3d 920, 923-24 (D.C. Cir. 2008) ("[W]e understand why defendants find it unfair [and] [m]any judges and commentators have similarly argued that using acquitted conduct to increase a defendant's sentence undermines respect for the law and the jury system").

In the post-conviction context, petitioners with colorable claims are often left

without relief due to their failure to comply with the many procedural bars. When lawyers complain about these apparent injustices, the government points to the importance of the finality of trial verdicts. But a fair system cannot only preach the importance of finality when the verdict is guilty. Those same considerations counsel in favor of rejecting requests to consider acquitted conduct.

The need to avoid unwarranted sentencing disparities also plays an important role when it comes to issues of acquittal conduct. In 2010, the Sentencing Commission conducted a survey of 639 federal judges. During the survey, the judges were asked whether judges should consider acquitted conduct as relevant conduct at sentencing. Only sixteen percent of judges said that they thought acquitted conduct should ever be considered. ("Results of Survey of United States District Judges January 2010 through March 2010," https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-projects-and-surveys/surveys/20100608_Judge_Survey.pdf at 10).

Obviously, this Court is not bound by this apparent consensus and has to make its own determination regarding the propriety of relying on acquitted conduct in this case. But the fact that there is widespread rejection of the use of acquitted conduct is one factor this Court should take into consideration. So to is the impending amendments to the Sentencing Guidelines, adopted April 30, 2024, and scheduled to take effect on November 1. The Sentencing Commission, after considering many of the same

concerns argued above, has promulgated an amendment to §1B1.3 (Relevant Conduct), adding subsection (c) which states:

> ACQUITTED CONDUCT.—Relevant conduct does not include conduct for which the defendant was criminally charged and acquitted in federal court, unless such conduct also establishes, in whole or in part, the instant offense of conviction.

Pursuant to the current version of the USSG §1B1.3, the 2 point enhancement for knowledge of narcotics proceeds cannot be applied because it is acquitted conduct.

**Sentencing Framework**

When determining the appropriate sentence for an individual defendant, a sentencing court should impose the shortest possible sentence that (A) reflects "the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" (B) deters future criminal conduct; (C) protects the public from the defendant; and (D) provides the defendant with the "needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553. When determining whether a given sentence is sufficient to effectuate these purposes district courts are directed to consider:

1. "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a);

2. "the kinds of sentences available," 18 U.S.C. § 3553(a);

3. the defendant's Guidelines range;

4. any relevant policy statements;

5. "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18

U.S.C. § 3553(a);

6.  "the need to provide restitution to any victims of the offense,"  18 U.S.C. § 3553(a).

A defendant's guideline range is advisory. *United States v. Booker,* 543 U.S. 220, 244 (2005). Under *Booker* and its progeny sentencing courts may not treat the applicable guideline range as presumptively reasonable. *Nelson v. United States,* 129 S.Ct. 890, 891 (2009). Instead, the advisory guideline range is a single factor to be taken into consideration along with the other factors listed in 18 U.S.C. § 3553(a). *Kimbrough v. United States,* 552 U.S. 85, 92 (2007). In the pursuit of a just sentence, district courts may devise policies and impose sentences that are at odds with the policies articulated by the Federal Sentencing Guidelines. *Spears v. United States,* 129 S. Ct. 840 (2009). Therefore, § 3553 mandates that district courts impose a sentence "no longer than necessary" to accomplish the purposes of punishment in 18 U.S.C. § 3553(a)(2), even where that sentence falls below the applicable guideline range. In Mr. Rhew's case, there is no reason to believe that any prison sentence would be necessary to serve the purposes of punishment set forth under Section 3553.

## I.    Because of the Defendant's Unique Personal Characteristics, A Prison Sentence Is Not Necessary To Effectuate The Purposes Of Punishment Articulated In § 3553.

As noted in the PSIR, a variance may be warranted in this case in light of the defendant's lack of criminal history, family ties, and employment history.

Mr. Rhew's personal background plainly demonstrates his commitment to his

family, his education, his career, and his community. Mr. Rhew's life experience truly embodies the American dream.  The man literally came to this country with nothing.  Armed only with opportunity, he built a massively successful business through a relentless commitment to hard work and his innate creativity, vision, and ingenuity. Mr. Rhew also followed the proper steps to become a citizen of this country.  Outside of this offense, his story is the quintessential American success story.  All of his years of hard work, sacrifice, and success have extraordinary value.  He has generated products that have been utilized by people across the world for decades.  Over the years, he has created jobs, created revenue, and been a source of income and prosperity for his employees. Mr. Rhew is undeniably a job creator. His employees thrived while working for him. He is precisely what we want American entrepreneurs to be. His commitment to excellence in his products and his incredible economic success, which was established long before the events of this case, make him a laudable person whose achievements cannot be wiped out by the offense conduct in this case.

Mr. Rhew extols many virtues and positive character traits that render him an asset to any community.  With his success, he has supported his immediate and extended family at all levels.  He has been a source of support for the Korean community in Los Angeles.  There is no sense in which he can be described as a detriment to society or to any community of which he is a part.  He is quite the opposite of that.  When determining what sentence is sufficient, but not greater than necessary, what the Court

must do is consider the benefits that Mr. Rhew brings to his community and contrast those with the benefits of his incarceration. That is an easy calculus. There are no benefits to removing Mr. Rhew from his family and his community. That would bring a net harm to both. On the other hand, his continued presence benefits all of those with whom he has contact. Consequently, in pragmatic terms, a custodial sentence serves no meaningful or positive purpose.

Studies have demonstrated that offenders such as Mr. Rhew are particularly unlikely to reoffend, and thus exhibit a greatly reduced need for deterrence. The Sentencing Commission has already demonstrated that individuals in Criminal History Category I, like Rhew, are the least likely defendants to recidivate. *See* Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines, United States Sentencing Commission (2004) ("Measuring Recidivism") at 6 (13.8 percent of offenders in CHC I recidivate compared to 55.2 percent in CHC VI).[1] Age is also a significant factor in recidivism. Mr. Rhew is already over 70 years old. The risk of recidivism dramatically decreases with age. Defendants over the age of 50 in CHC I have a recidivism rate of only 6.2 percent. Measuring Recidivism at 28. Mr. Rhew is 20 years past that age, and the reduction in recidivism only increases as older and older defendants are considered. It is also important to note that "[t]here is no

---

[1] This statistic included even technical supervised release revocations as "recidivism." If only additional convictions were counted the percentage drops below 5 percent. *See* Measuring Recidivism at 22.

apparent relationship between the sentencing guideline final offense level and recidivism risk." *Id.* at 13.

With no prior arrests, Mr. Rhew has never been to prison. The prospect of facing even six months in prison is particularly daunting for someone like Mr. Rhew, a professional with no prior experience in the criminal justice system. A guideline sentence in this case is tantamount to a sentence of death for Mr. Rhew because of his age. This crime does not warrant a death sentence. Mr. Rhew has been living with the threat of spending the rest of his life in prison since his arrest in this case. That fact alone has made it all too apparent to him that he cannot afford to recidivate in any way in the future. Any possible deterrence that a prison sentence might have has already been realized for Mr. Rhew and will not be enhanced through imposing a custodial sentence in this case.

The time Mr. Rhew has already spent even on pretrial release in this case has been shocking, humiliating, and truly devastating for him. It has destroyed his reputation. It has caused the downfall of the business that was his life's work. It has left him a shell of the man that he used to be. For a 70-year-old defendant who has never committed a violent act, that is sufficient punishment. Any possible deterrence that a prison sentence might have has already been realized for Mr. Rhew and will not be enhanced through imposing any actual stay behind bars beyond what a probationary sentence will offer.

With a lifetime otherwise free of criminal behavior and no prior experience in prison, Mr. Rhew exhibits a markedly low risk of recidivism. He does not present the same concerns about deterrence as the overwhelming majority of criminal defendants in federal court facing the guidelines at issue here. Hence, in order to have a just outcome in this case, Mr. Rhew should have a lesser sentence than such other defendants would. A sentence of probation with a fine within the guideline range is that sentence.

## II.    BALANCING THE § 3553 FACTORS

Section 3553 directs courts to impose a sentence no longer than necessary to effectuate the historic purposes of punishment: retribution, incapacitation, deterrence and rehabilitation. Because he has been convicted of a serious offense, Mr. Rhew must be punished. However, there is nothing from his personal background to suggest that, after hs experience in federal court, he would even think about recidivating, especially given his age, lack of prior prison experience, and otherwise impressive prior life experience.

The purposes of punishment outlined in § 3553(a) simply do not justify the imposition of a sentence of incarceration. The application of a guidelines sentence of imprisonment in this case would constitute an arbitrary and un-nuanced adherence to guidelines that are explicitly advisory and meant to be only one component of a more personalized and thorough analysis under §3553.

There is no evidence that Mr. Rhew requires incapacitation in light of his age, positive life experience, and contributions to society. Likewise, for the same reasons, neither specific deterrence nor rehabilitation requires any sentence of incarceration. The law instructs the Court to issue a sentence sufficient to recognize "the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a). Imposing a guidelines prison sentence would work to unnecessarily undermine, not promote, respect for the law. Sending a remarkable and groundbreaking businessman with a lifetime of hard work, job creation, and success to federal prison for his first offense would be a draconian penalty that would create a distrust and disrespect for the legal system on the part of anyone who was aware of it, particularly the immigrant population who pays attention to cases like this and is constantly feeling as if the system is prejudiced against them.  Sending Si Rhew to prison for this offense will assuredly not promote respect for the law.

It must not be forgotten or minimized that Mr. Rhew faces consequences as a result of his conviction in this case that would not be faced by the average defendant. Mr. Rhew was one of the most, if not the most, celebrated businessman in the Korean garment district community.  The charges and conviction in this case have taken all of that away.  His business has been decimated.  His reputation has been destroyed.  A groundbreaking and incredible life's work has been wiped out in the eyes of his friends and neighbors.  Mr. Rhew's great success and reputation as a pillar of his community

has been replaced by a reputation of shame.  That is a loss that is not experienced by the average criminal defendant with Mr. Rhew's recommended sentencing range under the Guidelines.  This does not mean that he should escape all other punishment for his conviction in this case. But it does mean that his punishment should be tempered by taking into account the full consequences that this crime has had on his life.  Whether he goes to prison or is instead placed on probation, the reputation he valued more than anything will never be resurrected.   His actions in this case have already cost him the life he worked so hard to build for years.  He has paid that price, which is actually higher than a finite prison sentence could be.  That consequence alone will likely do more than any prison sentence ever could to adequately and proportionately punish Mr. Rhew for his conduct in this case. The Court should recognize that reality, take into account that this is a consequence not faced by the typical defendant facing a similar guidelines range, and enter a sentence below the advisory guidelines range.

This Court must promote respect for the law through its sentence. But respect for the law is not the same thing as fear of the law. A law is respected when it is tempered by mercy. Lengthy prison sentences may promote fear of the law but they do not necessarily promote respect. When a defendant who has lived a remarkable and law-abiding life outside of his conviction receives a sentence that takes into account his life of positive contributions to the community, the collateral consequences he faces as a result of the conviction, and the daunting nature of a first federal criminal sentence, that

sentence demonstrates that the justice system is indeed reasonable. And that, above all things, promotes respect for the law.

　　For a person of Ms. Rhew's background and experience, a sentence of probation with a substantial fine is a sentence that will more than satisfy all of the purposes of punishment under §3553. That is an appropriate sentence. It is a just sentence. And it is the sentence Mr. Rhew asks that this Court impose.